# William J. Pennock v. The Crescent Pipe Line Co., Appellant.

*Pipe lines—Eminent domain—Evidence—Competency of witness.*

In an action to recover damages for injury caused by the location and construction of a pipe line across a farm, a witness is competent to testify as to damages, who has knowledge of the land, and has knowledge of the prices brought by other lands in the neighborhood which had pipe lines across them.

A witness who was not upon the ground when the work was done is not competent to testify as to construction damages caused in the laying of a pipe line.

Argued Feb. 13, 1895. Appeal, No. 157, July T., 1894, by defendant, from judgment of C. P. Chester Co., Aug. T., 1893, No. 131, on verdict for plaintiff. Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Appeal by defendant from the report of jury of view, assess-ing damages for injuries sustained by reason of the defendant's location and construction of a pipe line upon the appellee's premises. Before HEMPHILL, J.

At the trial Pennock M. Pyle, a witness for plaintiff, testified as follows :

" Q. Are you familiar with sales of property in that neigh-borhood? A. I think I am. Q. Are you familiar with sales of properties with pipe lines through them ? A. So far as prop-erties have been sold in that section with pipe lines on them, but there have not been many. Q. Are you familiar with those? A. Yes, sir. Q. What in your judgment was this property worth before this pipe line was put on it ? A. I thought the property would sell for from $85.00 to $90.00 an acre. Q. And since, what is your judgment of its value ? "

Mr. Reid : " I object."

By the Court: " Q. What is the extent of your knowledge as to sales of property with pipe lines on them ? How many have you known ? A. There are only two properties with the line on them within twelve or fourteen miles of that that have been sold. Q. Do you know for what they have been sold? A. Yes, sir. Q. Do you know of any others? Know of any on any other line ? A. No, sir."

The Court: "Objection overruled. Bill sealed."

A. "I think it will sell for $60.00 or $65.00 an acre. Q. A depreciation of $20.00 or $25.00 per acre? A. Yes, sir." [1]

Elwood R. Green, a witness for plaintiff, testified as follows: "Q. You reside in Kennett Square? A. Yes, sir. Q. You are a justice of the peace? A. Yes, sir. Q. What is your main business? A. Real estate and loaning. Q. How long have you been engaged in the real estate business? A. Nine years. Q. Are you familiar with the Pennock property and property in that neighborhood? A. I have not been all over the property; I know where it is. I do not know every field on it. Q. You know the location? A. Yes, sir. Q. Have you ever been over the property? A. Partially over it. Q. Over where the pipe line goes? A. Yes, sir. Q. Have you a knowledge of the sales of property in that neighborhood? A. Yes, I have. Q. Have you bought and sold property there? A. I have sold a good many properties in that vicinity. Q. Are you familiar with properties that have been sold with pipe lines on them? A. I have never had anything to do with properties that had pipe lines on them, and I do not know of but two that have been sold. Q. Have you any on hand for sale? A. I have one for sale that has a pipe line on it. Q. And you know of two properties that have been sold with pipe lines on them? A. Yes, sir. Those two that have been mentioned; the Pierson place and the Cope place. I was at the Pierson sale. Q. And you know what the Cope property sold for? A. I know what was reported from those that came home in the evening; those that were there. Q. What is your judgment of the value of the Pennock property before the pipe line went through it? A. About $85.00 an acre. Q. And what since the pipe line went through it?"

Mr. Reid: "I object."

The Court: "Objection is overruled. Bill sealed."

A. "I would think about $70.00." [2]

Richard W. Schrack testified for plaintiff as follows: "Q. You have been on this property of Mr. Pennock? A. Yes, sir. Q. And are you or not familiar with the effect of pipe lines upon properties? A. I am some. Q. With what properties are you familiar where they have been bought and sold since pipe lines have been put upon them? A. In West Caln town-

ship. Not this pipe line. Q. Any other place? A. One in Lancaster county. Q. From your knowledge what effect have pipe lines on properties?"

Mr. Reid: "I object."

The Court: "Objection overruled. Bill sealed."

A. "Depreciates it, $25.00 to $30.00 an acre." [3]

When John E. Huey, witness for defendant, was on the stand, he was asked this question: "Q. What in your judgment was the damage done to that property by reason of the pipe line being laid upon it?"

Wm. M. Hayes: "Do you mean the construction damages?"

Mr. Reid: "Yes, sir; and everything."

Wm. M. Hayes: "I object. He does not know anything about the construction damages; he was not there when it was done, and knows nothing more than the jury or our witnesses. He was not there and did not see how it was done, and cannot form any better judgment than the jury. Our witnesses were not allowed to speak of that except those that were there when the construction was going on."

By the Court: "Q. Were you there when the construction was going on? A. No, sir."

Mr. Reid: "He knew the property before the pipe line went on it, and has known of sales of property with pipe lines on them. I asked him what was the difference in value, taking everything into consideration, before and after."

The Court: "I do not think he is competent to pass on construction damage; he can pass on the other. There are so many elements that enter into the construction that might not appear on the face of the ground, such as destruction of fences, and the injury that is temporarily done, and does not show after it is filled in. Unless he saw the way it was constructed I do not think he is competent to testify on construction damages,—not as to the damages that were occasioned by reason of the construction. Unless he has knowledge of how it was constructed, how badly the ground was trampled over or cut up, the destruction of trees and fences, I do not see how he can testify; he can see nothing more than the jury saw. The objection is sustained. Bill sealed." [4]

Verdict and judgment for plaintiff for $1,180. Defendant appealed.

*Errors assigned* were (1–3) rulings on evidence, quoting the bill of exceptions.

*S. D. Mitchell* and *Alfred P. Reid*, for appellant.—The witnesses, Pennock M. Pyle, Elwood R. Green and Richard W. Schrack, had not sufficient knowledge of the effect of the existence of pipe line easements upon the sale of property to make them competent to give an estimate or an opinion of the effect of such easements upon the market value of the property: Rogers on Expert Testimony, sec. 153 ; Penna. P. & B. R. R. v. Root, 53 N. J. L. 255 ; Michael v. The Crescent Pipe Line Co., 159 Pa. 104 ; Curtin v. R. R., 135 Pa. 30 ; Pittsburg etc. v. Vance, 115 Pa. 325 ; R. R. Co. v. Patterson, 107 Pa. 464 ; Flint v. Flint, 6 Allen, 34 ; Herbert v. Rainey, 162 Pa. 525 ; Penna. R. R. v. Butler, 57 Pa. 335 ; Huntington & C. R. R. v. Decker, 82 Pa. 119.

John E. Huey was a competent witness. Any farmer passing over the line immediately after its construction, and observing the results, could form an estimate of the damages occasioned by the construction with reasonable accuracy. It was not necessary for him to be on the property every day the pipe line men were there and see every shovelful of dirt thrown in and out, to make an estimate of the damage done thereby.

*Wm. M. Hayes*, *J. Carroll Hayes* with him, for appellees.— The three witnesses offered by plaintiff were competent: Pittsburg R. R. v. Rose, 74 Pa. 368 ; Michael v. Crescent Pipe Line Co., 159 Pa. 99 ; Penna. & N. Y. R. R. v. Bunnell, 81 Pa. 426 ; Pittsburg R. R. v. Robinson, 95 Pa. 426 ; Schuylkill R. R. v. Stocker, 128 Pa. 233 ; Schuylkill River R. R. v. Rees, 26 W. N. C. 500 ; State Line R. R. v. Playford, 14 Alt. Rep. 355 ; Beck v. R. R., 148 Pa. 271 ; Pittsburg Southern R. R. v. Reed, 44 L. I. 92.

PER CURIAM, October 7, 1895 :

We find nothing in either of the assignments of error that would justify a reversal of the judgment. The rulings complained of are substantially correct.

Judgment affirmed.